## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

| | |
|---|---|
| SCOTT B. SULLIVAN | |
| Plaintiff - Appellant, | Case No. 19-3213 |
| v. | (D.C. No. 2:18-CV-02078-JAR-TJJ) |
| | (D. Kan.) |
| UNIVERSITY OF KANSAS HOSPITAL AUTHORITY, et. Al, | |
| Defendants - Appellees, | |

## APPELLANT'S CONSENTED MOTION FOR SECOND EXTENSION OF TIME TO

## FILE OPENING BRIEF

**27.6 Motions to extend time.**

**(1)** Opening briefs for the following cases are due on the following dates:

1.  No. 19-3213 Sullivan v. University of Kansas Hospital Authority et. Al.

    Due: January 10th, 2019

2.  No. 19-3215 Sullivan v. HCA HealthCare, et. Al

    Due: January 10th, 2019

3.  No. 19-3216 Sullivan v. AdventHealth Systems, et. Al

    Due: January 15th, 2019

**(2)** The following have all responded consenting to the extension of time to file the opening brief:

1.  Casey Walker - Representing Dr. McIlnay

2.  Diana L Beckman - Representing HCA Healthcare, Inc.; Midwest Division -- MMC,LLC (Menorah Medical Center), Family Medical Group of Overland Park, LLC; Dr. McCowen, Dr. Ruiz

3.  Kelli M. Broers - Representing Steve Sullivan, Lisa Sullivan, Susan Williams, Diana Rutherford

4.  David Tyrell - Representing The University of Kansas Physicians, Dr. Judson Bertsch, Dr. Larry Cordell, Dr. Phillip Hylton, Dr. Bradley S. Jackson, Dr. John Leever, Dr. Mohsen Tahani, Dr. Brandon Welsh, Dr. Tiffany Williams, and Dr. Kevin Brown.

5.  Wesley Smith - Representing The University of Kansas Hospital Authority

6.  Casey Walker - Representing Dr. Clough, APRN Carpenter, and Neurosurgery of South Kansas City

7.  Bruce Keplinger - Representing AdventHealth, Shawnee Mission Medical Center, The General Conference of Seventh-Day Adventists, and the New Haven Seventh-Day Adventist Church

Only Pro Se Defendants Janet Gereau, Michelle Safford, and Jonathan Alan Keck II have not responded to the request for consent.

**(3)** The Court granted previous motions for a 30 day extension in each of the cases. This additional extension is requested primarily due to the recent escalation of my symptoms; for which my current health care providers have ordered numerous tests which are still pending: including echocardiogram, spinal MRIs, and removal and testing of numerous moles and lesions. My recent escalation of symptoms has included recurring, sharp chest pains, in addition to the symptoms of cerebral spinal fluid hypotension with which I have become very familiar. I have requested that each of the named health care providers provide me with medical care, and all have refused; forcing me to seek care only through charitable sources. But this has even further limited the amount of time that I am physically able to sit upright and type, or even to sort documents and do research. I have also hoped to be able to draft and file Motions for injunctive relief, ordering the named health care providers to properly acknowledge, diagnose, and treat my Tarlov Cysts; particularly if I must go to the emergency room; but have been unable to complete essentially anything in the past three weeks.

**Arguments and Authorities**

**(2) the case is so complex that an adequate brief cannot reasonably be prepared by the due date.**

I want to begin, and will probably end with a reminder. Everything that these defendants that about me was wrong. After nearly four years of abuse and neglect, it was finally revealed that I have Tarlov Cyst Disease. And everything that these defendants and literally dozens of others had accused me of was wrong. They thought that they were hating me and hurting me for something else. They thought that I was a faker. They

thought that I was a fraud. They thought that I was an opioid drug seeker. But in the end, what they were hating me for was that I have a rare disease.  My grandfather's words echo in my mind every day. When I told him that my brother and sister were accusing me of being a hard core drug addict; he responded "Well that's what you're acting like."

I was acting like a person with Tarlov Cysts on my spine. My symptoms, all of them, were the symptoms of a person with Tarlov Cysts on my spine. But for the first four years, many treated me like a drug addict, like a fraud, or like I was mentally ill; because drug addicts, frauds and the mentally ill often fake the symptoms that people with Tarlov Cyst Disease actually have.

Then, when everyone found out that I have Tarlov Cyst Disease, from that point forward, even more people treated me like a drug addict, like a faker, like a fraud, like a malingerer, like a hypochondriac, like a schizophrenic. I thought that knowing the cause of my symptoms was going to make things better. But instead, knowing the cause of my symptoms only made things worse.

This may not be the greatest of Abe Lincoln's quotes; and is not even the most quoted on the subject. But I think it appropriate enough to include it; because it is critical for this court to understand...that where I have failed to defend my own rights, it is not merely my rights which I was trying to defend. Millions of people are afflicted with this same disease in The United States of America alone;  and those millions are subjected to the same prejudice and discrimination. And among those with whom I have shared experiences -- members of Tarlov Cyst Support groups, and the leader of The Tarlov

4

Cyst Foundation -- we all experience these exact same prejudices, abuse, neglect, and discrimination. And in almost every case, the people who abuse us think that they are doing the right thing...they think that they are just punishing fakers and frauds and malingerers and drug addicts. And in some instances, they actually believe that they are punishing the mentally ill as well.

**"When men take it in their heads to day, to hang gamblers, or burn murderers, they should recollect, that, in the confusion usually attending such transactions, they will be as likely to hang or burn some one who is neither a gambler nor a murderer as one who is; and that, acting upon the example they set, the mob of to-morrow, may, and probably will, hang or burn some of them by the very same mistake. And not only so; the innocent, those who have ever set their faces against violations of law in every shape, alike with the guilty, fall victims to the ravages of mob law; and thus it goes on, step by step, till all the walls erected for the defense of the persons and property of individuals, are trodden down, and disregarded. But all this even, is not the full extent of the evil.--By such examples, by instances of the perpetrators of such acts going unpunished, the lawless in spirit, are encouraged to become lawless in practice; and having been used to no restraint, but dread of punishment, they thus become, absolutely unrestrained.--"**

**Abraham Lincoln: The Lyceum Address, 1838**

My progress in preparing the briefs has mostly been delayed due to my escalating disabilities, and my attempts to secure medical care through charitable organizations, which are still ongoing. Though I have received examination, orders for new tests, and have four tests scheduled in the next week; and have begun several new medications within the past three weeks; it none-the-less remains true that I am completely

disenfranchised from all access to the medical care that I will need to cure my Tarlov Cysts, and to address whatever other diseases may be responsible for my current escalation of symptoms.

And it is important to note, that when I was first injured on January 9th, 2012; I not only had workers compensation insurance which I personally had paid for, I also had private health insurance, and had been privately insured for almost six years. And equally important, at the time of my injury, no one disputed me. Not my doctors at least. None of my doctors doubted my symptoms; and it was only my family...not even my employer...who doubted that I had been injured at work, that I had suffered a severe spinal injury, and even that I required surgery. But, at that time, the only diagnosis was herniated discs. The Tarlov Cysts would begin to form slowly...slowly at least, compared to the herniations. But rapidly in that within two years I was assessed as 82% functionally impaired.

It was only after the University of Kansas imaged Tarlov Cysts, but did not tell me about the cysts, that any health care provider had even doubted the veracity of my symptoms. And on their coattails, and on the wings of mob mentality, I have been prejudged, discriminated against, and deprived of all medical care for another six years.

Though I should qualify that...I have been deprived of all medical care *appropriate for Tarlov Cysts and Tarlov Cyst Disease;* and ultimately disenfranchised from all medical care, save for that which I can attain via charity.

I have been reduced to beggary. But not merely for food, clothing, and shelter; but also for the life sustaining medical care that I increasingly desperately need.

I have been diagnosed with anxiety and depression plus my ongoing sleep deprivation; and prescribed medications to address those conditions. My doctors have also performed an EKG, and requested an echo cardiogram and spinal and sacral MRIs; which are to be performed in the coming week. They have also identified numerous moles and lesions which they want to test for melanoma.

This is a point which I have attempted to explain -- the misapprehension regarding my pleadings and regarding my health care situation generally. Because of the persistent refusal of health care professionals to acknowledge, diagnose, and treat my Tarlov Cysts; I have been "flagged" as a suspected opioid seeker, suspected disability fraud, suspected malingerer,  and diagnosed falsely with *delusional* mental illnesses ...  such as schizophrenia, psychosis, hypochondria or somatic symptom disorder. Because many of the named defendants believed that I *may have been* faking my back symptoms, they neglected all other aspects of my health care as well; ultimately leaving me increasingly disabled, and unable even to qualify for Medicaid without proper acknowledgement of my underlying disabilities which are caused by the Tarlov Cysts.

The years of sleep deprivation, inability to exercise, and cumulative nerve damage is, I suspect, also resulting in additional damage to other systems; particularly at risk is my cardio-vascular health. Additionally, as I have been informing doctors for more than seven years, I have a family history of spinal cancers; which are also often overlooked on MRIs, and frequently unreported to patients until after it is too late for a cure. Hence, it is increasingly important that the issues involved in this case are resolved without unnecessary delay. But the delay in preparing my briefs has been unavoidable.

It is not merely the case that people with Tarlov Cyst Disease are denied medical care for Tarlov Cyst Disease. All of our health care interactions are affected; in my case very specifically because my physical disabilities are so obvious to anyone who sees me, that even when I seek medical care for other conditions (such as when I went to the University of Kansas Medical Center for a perceived sinus infection) my spinal condition draws all of their attention. And because my spinal condition fits the profile that hospitals have established for identifying suspected opioid seekers; all of my health care interactions are affected; including my follow up visits with primary care providers.

Most importantly, none of my psychological disabilities are delusional in nature. I am not imagining, exaggerating, or over-reacting to my physical symptoms, to the intentional obstruction of my access to health care and health care benefits via my workers compensation contracts, or via my private health insurance contracts; nor am I imagining, exaggerating, or over-reacting to the obstruction of my access to disability benefits via SSDI, as that is a pre-requisite in Kansas to qualify for Medicaid (called KanCare in Kansas).

And most importantly, I am not imagining, exaggerating, or over-reacting to the invidious nature and wide-spread social prevalence of the discriminatory animus that I have alleged.

In other words, both the motivations of the defendants and the effects of their actions have left me substantially disabled and disenfranchised from medical care; specifically with no access to medical care appropriate to treatment of Tarlov Cyst Disease anywhere in the entire state of Kansas. And all of it has its origins in prejudice,

discrimination, and retaliation. The disabled are considered as useless to the society as the gamblers; and as undesirable as the born murderers. Historically, we have been called "The Useless Eaters"; and subjected to everything from sterilization, to institutionalization, to euthanasia and extermination. And yet, in excluding us from equal rights protections it has been argued that "the handicapped" are not a class that has historically been discriminated against.

All of the defendants' motivations as well as the effects of their actions are relevant, and inextricably inter-twined; and complicated substantially by the refusal of State of Kansas law enforcement and regulatory agencies to intervene; and by the obstructions of justice specifically experienced in the Kansas Courts regarding the underlying insurance frauds committed against me, which has necessitated Federal jurisdiction. And, as predicted in the Lyceum Address, because these actions...discrimination, retaliation, abuse and neglect of the disabled... almost always go unpunished, the lawless in spirit become lawless in practice; and the abuses that I have alleged continue, unrestrained.

As stated, there are some issues...centered upon the threats that were made against me...that I was unable to fully plead for fear of retaliation. And on this subject, yet again, there is the complexity of pleading and proving that my fear and anxiety(my true mental illnesses) are the result of the threats against me; versus the presumption that my fear and anxiety are the result of imagined threats (the mental illness of which I am accused) and the cause of my perceived physical disabilities.

9

Hence, as explained more fully below; it is not a lack of due diligence, or a failure to prioritize which has delayed me in the completion of the briefing. It is genuine physical disabilities and psychological disabilities which have been caused and contributed to by these defendants, and by many others, and which are escalating rapidly.

And that is why the case is so complex. There are factual disputes, and disputes over cause and effect. And there are disputes over what is or is not the appropriate statute or statutes to address a health care crisis that affects millions of people similarly; and not as a result of individual physicians' errors, but as a result of industry wide practices which obstruct the benefits of health care and of insurance for everyone who has this disease.

But due to my inability to finish pleadings, motions, and even these briefs in the time and fashion that is expected of the court; I feel that I must go further than just pleading the complexity at this point; but also must plead the likelihood that these cases will be remanded for additional pleading, possibly for appointment of counsel, hopefully for investigation by the DOJ, and at the very least to allow discovery and to require the defendants to actually deny, and to only deny, those facts which they in good faith may deny.

No one can honestly dispute that I have Tarlov Cysts. But all of these health care defendants apparently intend to dispute that these cysts cause symptoms. This forces me to proceed on the basis of the scientific evidence without expert testimony; because subsequent to both Dr. Frank Feigenbaum and Dr. Paul Arnold (of the University of

Kansas Medical Center) leaving Kansas early in 2016, there are no expert witnesses to testify specifically about Tarlov Cyst Disease.

This is also a primary reason that I was unable to retain counsel for this or for my other pending cases. Not even the Disability Rights Center of Kansas would represent the interests of people with Tarlov Cyst Disease in light of the near-universal refusal of health care providers to acknowledge, diagnose, and treat this disease; and the fact that nearly everyone who has this disease is diagnosed with mental illness rather than with a physical disease. But the available scientific evidence is directly contradictory to the statements made by my physicians about Tarlov Cyst Disease. Only by perjuring themselves could they sustain the denials of this disease that have formed the basis of their denials of medical care to me.

No one actually disputes that I suffer mental illness. Yet ironically, it is the people who argue that my mental illness is of the most extreme type (delusional mental illnesses; such as schizophrenia, psychosis, hypochondrias, somatic symptom disorder); who are also the ones who argue that I am not disabled by it.

And this was an issue that I felt necessitated amendment to the pleadings; specifically because it never occurred to me to plead that I am being deprived of medical care for Tarlov Cysts *as a result* of being perceived as mentally ill. In other words, as a matter of technical pleading, it is necessary to plead that the defenses raised by the defendants are not defenses at all; but rather that their defenses are merely confessions of different ADA violations; such as discrimination against those *regarded as* mentally ill, or those *regarded as* opioid drug seekers. Even though those diagnoses were wrong,

11

discrimination against the perceived mentally ill or perceived opioid seekers is also prohibited under the ADA; as is discrimination against people because they have Tarlov Cyst Disease.

So there is a very complex and circuitous factual dispute over the nature and causes of both my physical and psychological disabilities; as well as the complexity of pleading that even the defendants' defenses are in fact merely confessions of discrimination upon a different pretext which would also be prohibited, even if it were true.

There are also many bad-faith factual disputes which were implied by the defendants' counsel in their motions to dismiss; such as the denial of the existence of contracts for health care and for insurance benefits. These denials, which are based entirely upon technicalities of pleading standards, would require that the defendants perjure themselves in order to be sustained. The health care contracts as well as the health insurance contracts are already within the defendants' possession; facts which their attorneys would know if they had performed reasonable inquiries in advance of filing Motions to Dismiss, as required by FRCP 11.

Beyond the complexity of the factual disputes, and both opposing parties' and the court's mishandling of factual disputes; there is the additional complexity of the legal disputes, which are almost entirely founded upon the defendants' arguing in favor of statutory interpretations that limit the relevant statutes by either inserting or removing statutory language. In all instances, my claims are justified under the plain language of the statutes. But many of these are statutes which judicial branches have often abridged

unjustly( particularly in their civil applications); and arguably for political and financial reasons.

And this is a point at which I have to admit that my psychological disabilities intersect with the complexities of the case in hindering my progress. I have been retaliated against and even threatened specifically because I brought claims in Kansas courts -- including the Department of Labor's Workers Compensation Administrative law courts, the Johnson County District Court and Kansas Court of Appeals -- under laws which are not popular in the Kansas judicial branch, Bar Associations, and population generally.

I have faced extreme retaliation, up to and including threats against my life. And I have to be honest, particularly as a result of my failure to complete my briefs, that I am terrified of the very concept of accusing a judge of making a mistake. I may need to present testimony from my church Elders, friends and relatives to document this; but I am terrified of retaliation *from the judicial branch.* And this fear stops me dead in my tracks; though eventually I know that I am going to be forced to plead it with greater particularity.

It is bad enough that I can only type for forty minutes to an hour before my physical symptoms become unbearable; literally symptoms for which I should go to the ER every day. But now, I find myself once again needing to argue that judges made mistakes. And in the past, when I have argued that judges made mistakes; judges retaliated; to the effect that I no longer have access to medical care; and there is no one in The State of Kansas who will help me.

To be clear, in this context I mean no state agency in the State of Kansas would investigate or intervene; and many attorneys cited the actions of State judges specifically as their basis for refusing to represent me, because doing so would also involve investigation into the roles that judicial officers may have played in the obstruction of my medical care; and in the obstruction of investigations and prosecutions of the underlying frauds.

Never the less, fear of retaliation aside, it is necessary that the legal disputes which are involved in this case be resolved; especially with respect to Tarlov Cyst Disease.

97.5% of people with Tarlov Cysts are never told that we have this disease. There are only three surgeons in the nation who regularly treat Tarlov Cysts; and the vast majority...over 99.9% of surgeons in relevant specialties (neurosurgeons, orthopedic surgeons, and interventional radiologists, among others) completely deny the relevance of Tarlov Cysts, to the effect of not even telling patients that we have them; and of lying to us about the significance of the cysts when we do find out.

With estimates of between 3 million and 6 million people who have symptomatic Tarlov Cyst Disease, and only a few hundred who actually receive medical care in any given year; this is obviously much more than a typical medical malpractice case.

Yet, the current interpretations of the ADA appear to exclude health care providers...even those who discriminate against an entire disease. At least, that was the opinion of the District Court; even though all of the interpretations of the ADA which excluded health care providers were based upon language from the Rehabilitation Act that does not even appear in the ADA.

What has happened is that individual cases in which the ADA probably did not apply because of the facts of the case were elevated to dictum whereby health care providers have been given a judicially-created and near total immunity when they choose to engage in discriminatory denials of medical care. They are only required to fabricate a pretext, and their discrimination can no longer be considered "solely by reason of" the disability, and the patient cannot be considered "otherwise qualified" because the disability that they have is the one for which they are seeking medical care.

Exposing the way in which these cases became law requires briefing not only legislative history, and not only snippets of relevant case law; but also the judicial history which has evolved this error into law.

Ironically, it is the fact that we all agree that we disagree on the relevance and applicability of the ADA that necessitates the even more complex claims; such as those under RICO, the Civil Rights Acts, and common law remedies. These are the ones most complicated to brief; because these claims are all based upon the plain language of the statutes; but standing case law is often in opposition to the plain language.

Thus it is necessary for the defendants to invoke legislative history and intent to sustain their defenses; and they elevate legislative history above the rules of statutory construction; while even the legislative history is disputable. Thus adding layers to the complexity of the disputes; yet still with my positions supported by the plain language of all of the applicable statutes.

And just as I stated that I did not want to be in an adversarial position against the Department of Justice with respect to enforcement of the ADA; I never wanted to be in

an adversarial position against the judicial branch in arguing for the admittedly broad

plain language interpretation of statutes that the judicial branch often does not seem to

like very much. It is even awkward and very difficult for me to argue that the judicial

branch just does not like some of these statutes as they are written; even though there

is much professional scholarship documenting that the judicial branch does not like the

breadth of RICO, the Civil Rights Acts, the ADA and the RA. I don't want to be the guy

who has to argue that the courts' current precedents demonstrate a strong political bias

against the breadth of these statutes. I must. Because I am a victim of these practices;

and errantly  judicially narrowed statutes are the primary rights to relief that I have in the

Federal courts

And there is the strong dispute between the parties over the "conclusory allegations

standard." As I briefed in all of my responses, none of the defendants actually identified

which allegations they considered conclusory. In effect, they each waived these

arguments by not properly briefing them; but the court assumed the role of advocate by

selecting at the court's discretion allegations which the court felt were conclusory in

nature.

This deprived me of any opportunity for rebuttal; and of the opportunity to amend the

pleadings to correct clearly identified deficiencies; because none of the defendants

identified the deficiencies that the court eventually ruled upon.

The defendants merely stated that there *were* conclusory allegations; and left it to the

court to choose which allegations would or would not be granted the presumption of

truth. And in the case of every allegation that the court chose not to presume as true;

there were in fact sufficient factual allegations to support the conclusions which I drew...particularly as it relates to the inference of conspiracies based upon circumstantial evidence. This is a well-known exception to the conclusory allegations standard that requires a more thorough analysis of the facts than was made; and an opportunity to conduct discovery of such information as is solely within the control of the defendants.

Similarly with the blanket declaration that I have no standing to advance the rights of others; it is a well-known exception that in civil rights cases, and particularly in the case of the ADA, the plaintiff's standing derives from their personal experience of the alleged discriminatory actions or practices; but the rights to relief are explicitly intended to provide relief for all similarly situated people. While I admit that I cannot seek another person's damages, solely on the basis that I have the same disabilities; I can seek declaratory and injunctive relief to protect all people with the same disabilities.

And other people who have this same disease do experience the same discrimination ... literally 100% of us. And this can be proven both via the scientific evidence from peer-reviewed journals, and via anecdotal evidence, and testimony. And this was even cited in Johnson by Johnson v. Thompson as the exception to the arguably incorrect-anyway "otherwise qualified" test for ADA jurisdiction.

And it will be proven that the abuse, neglect, discrimination and retaliation that I have faced is directly the result of the onset of my disabilities; and in almost all cases was directly intended to obstruct my access to health care and to disability benefits and to access to justice in all of my then and currently pending cases. All of these facts clearly

give rise to rights to relief under Title V of the ADA; as well as under RICO and the Civil Rights Acts according to the plain language of the statutes.

On the facts, I will almost certainly prevail, even if the defendants proceed with their threatened and anticipated perjuries; as I do have sufficient evidence to document that I will prevail on all disputed issues of fact. And as the most fundamental dispute of law, I do have the right to present the facts to a jury of my peers. It can hardly be denied that judges become a bit crusty over time; especially when they spend substantial portions of their time every day being lied to by criminals. And it cannot be denied that I will still face the same societal prejudices when I face a jury. But at least with a jury I get to present the whole truth, and I get a fair opportunity to rebut the prejudices against me.

**(3) 27.6(E)(3)** I suffer extreme hardship, and in fact extreme physical pain and escalation of my symptoms even as a result of the effort exerted in sitting upright and typing for anything longer than 40 minutes

I am completely unemployable. And yet, in the absence of doctors' expert testimony, I also cannot qualify for disability benefits or for Kansas Medicaid coverage. Kansas quite famously has among the strictest, most limiting standards for Medicaid coverage; and even a person with zero income cannot qualify unless they are also a recipient of Social Security Disability Benefits.

At the present time, it is not possible that I will complete an acceptable brief by the current deadlines; though I continue to perform due diligence to the maximum of my ability in both research and writing.

The claims made within my pleadings are by no means frivolous; and are supported by existing statutes as well as decisional law; with the sole exceptions having been identified in briefs and Motions to the District Court as errors of law, and as grounds for expansion, modification, or creation of new law, consistent with the intent of Federal Rule of Civil Procedure 11.

*Scott B Sullivan* - 1/2/2020

Scott B. Sullivan - Appellant, Pro Se
7214 W 72st Terrace
Overland Park, KS 66204
(913)636-8271
scott@nerd-911.com

**Certificate of Service**

The Foregoing Motion for Extension of Time to File Opening Brief has been served by electronic mail upon the following attorneys representing the named parties 1/2/2020:

1. Casey Walker - Representing Dr. McIlnay at cwalker@slln.com

2. Diana L Beckman - Representing HCA Healthcare, Inc.; Midwest Division -- MMC,LLC (Menorah Medical Center), Family Medical Group of Overland Park, LLC; Dr. McCowen, Dr. Ruiz at dbeckman@wcllp.com

3. Kelli M. Broers - Representing Steve Sullivan, Lisa Sullivan, Susan Williams, Diana Rutherford at kbroers@mvplaw.com

4. David Tyrell - Representing The University of Kansas Physicians, Dr. Judson Bertsch, Dr. Larry Cordell, Dr. Phillip Hylton, Dr. Bradley S. Jackson, Dr. John Leever, Dr. Mohsen Tahani, Dr. Brandon Welsh, Dr. Tiffany Williams, and Dr. Kevin Brown. at dtyrell@loganlaw.com

5. Wesley Smith - Representing The University of Kansas Hospital Authority at WSmith@slln.com

6. Casey Walker - Representing Dr. Clough, APRN Carpenter, and Neurosurgery of South Kansas City at cwalker@slln.com

7. Bruce Keplinger - Representing AdventHealth, Shawnee Mission Medical Center, The General Conference of Seventh-Day Adventists, and the New Haven Seventh-Day Adventist Church at BK@nkfirm.com

8. Janet Gereau - Pro Se at gereauj@gmail.com

9. Michelle Safford - Pro Se at michelle.safford@gmail.com

10. Jonathan Alan Keck II - Pro Se via Michelle Safford at michelle.safford@gmail.com

1/2/2020

Scott B. Sullivan - Appellant, Pro Se
7214 W 72st Terrace
Overland Park, KS 66204
(913)636-8271
scott@nerd-911.com

*PRESS FIRMLY TO SEAL*




U.S. POSTAGE PAID
PME 1-Day
MISSION, KS
66202
JAN 02, 20
AMOUNT
**$25.50**
R2305K141559-18

1007          80257



**PRIORITY MAIL EXPRESS®**

EJ 071 389 628 2U

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( 913 ) 636-8271

Scott B Sullivan
7214 W 71st Terrace
Overland Park, KS 66204

**DELIVERY OPTIONS** (Customer Use Only)

☐ **SIGNATURE REQUIRED** *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
☐ 10:30 AM Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.*

TO: (PLEASE PRINT)   PHONE ( )

Byron White U.S. Courthouse
1823 Stout Street
Denver CO

ZIP + 4® (U.S. ADDRESSES ONLY)

8 0 2 5 7 - ___

■ For pickup or USPS Tracking™, visit USPS.com® or call 800-222-1811.
■ $100.00 insurance included.



**PAYMENT BY ACCOUNT** (If applicable)
USPS® Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| | | |
|---|---|---|
| ☑ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |

PO ZIP Code    Scheduled Delivery Date (MM/DD/YY)    Postage
66202          1/3/20                                $ 25.50

Date Accepted (MM/DD/YY)    Scheduled Delivery Time    Insurance Fee    COD Fee
1/2/20    ☐ 10:30 AM ☐ 3:00 PM ☑ 12 NOON    $    $

Time Accepted    ☐ AM ☑ PM    10:30 AM Delivery Fee    Return Receipt Fee    Live Animal Transportation Fee
3:01    $    $

Special Handling/Fragile    Sunday/Holiday Premium Fee    Total Postage & Fees
$    $    **25.50**

Weight    ☑ Flat Rate    Acceptance Employee Initials
___ lbs. ___ ozs.    AP    $

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY)    Time ☐ AM ☐ PM    Employee Signature

Delivery Attempt (MM/DD/YY)    Time ☐ AM ☐ PM    Employee Signature

LABEL 11-B, MARCH 2019    PSN 7690-02-000-9996

☜ **PEEL FROM THIS CORNER**



EP13F Oct 2018
OD: 12 1/2 x 9 1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; October 2018; All rights reserved.


UNITED STATES POSTAL SERVICE